IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| KELLIE KIFER,  §<br>　*Plaintiff*,　　　　　§<br>　　　　　　　　　　　§<br>v.　　　　　　　　　§<br>　　　　　　　　　　　§<br>　　　　　　　　　　　§<br>LOWE'S HOME CENTERS, LLC, f/k/a   §<br>LOWE'S HOME CENTERS, INC.,　§<br>　*Defendant*.　　　　§ | Case No. _____<br>Jury |

**PLAINTIFF KELLIE KIFER'S ORIGINAL COMPLAINT**

Plaintiff Kellie Kifer complains of Defendant Lowe's Home Centers, LLC, f/k/a Lowe's Home Centers, Inc., as follows:

**Nature of the Case**

1.　This is an employment discrimination case involving gender.

2.　This case arises from the following event -- Defendant fired Kifer.

3.　Kifer alleges that her gender, female, was a motivating factor in Defendant's decision to fire her.

4.　In her sole claim for relief, Kifer challenges Defendant's decision to fire her by bringing a claim pursuant to Section 703(a)(1) of Title VII of the Civil Rights Act of 1964, as amended, which is codified at 42 U.S.C. §2000e-2(a)(1), and which prohibits employment discrimination because of an individual's sex.

**Parties**

5.　Plaintiff Kellie Kifer is an individual. She resides in the City of Tool, Henderson County, Texas.

6. Defendant prepared, or had prepared, on Kifer an IRS Form W2 for Year 2012. That W2 identifies Kifer's employer as Lowe's Home Centers, Inc. Thus, during the time covered by that W2 Kifer was an "employee," as that term is defined in 42 U.S.C. §2000e-(f), of Lowe's Home Centers, Inc.

7. Defendant prepared, or had prepared, on Kifer an IRS Form W2 for Year 2013. That W2 identifies Kifer's employer as Lowe's Home Centers, LLC. Thus, during the time covered by that W2 Kifer was an "employee," as that term is defined in 42 U.S.C. §2000e-(f), of Lowe's Home Centers, LLC.

8. Defendant Lowe's Home Centers, LLC, f/k/a Lowe's Home Centers, Inc., is an active North Carolina corporation. It may be served with process by serving its registered agent, which is **Corporation Service Company, 211 East 7th Street, Suite 620, Austin, Texas 78701-3218**.

9. Lowe's Home Centers, Inc. was an "employer," as that term is defined in 42 U.S.C. §2000e-(b), of Kifer during the time reflected on the W2 referenced in paragraph 6.

10. Lowe's Home Centers, LLC was an "employer," as that term is defined in 42 U.S.C. §2000e-(b), of Kifer during the time reflected on the W2 referenced in paragraph 7.

11. In this document Defendant shall hereinafter be referenced simply as "Lowe's."

**Jurisdiction**

12. This Court has subject-matter jurisdiction over this lawsuit because by reason of 28 U.S.C. §1331 (federal question).

13. This Court has *in personam* jurisdiction, both specific and general, over Lowe's because Lowe's does business in Texas and Kifer's Title VII claim arose in Texas.

## Venue

14. Venue is proper in this judicial district because a substantial part of the events forming the basis of Kifer's Title VII claim occurred there. 42 U.S.C. §1391(b)(2).

15. On the day of the filing of this lawsuit, Lowe's operated a store located at 910 East End Boulevard in Marshall, Texas.

16. The store referenced in paragraph 15 is known inside Lowe's as "Store No. 1762."

17. The store referenced in paragraph 15 is located in a geographic area known inside Lowe's as "Market 1279."

18. Lowe's opened the store referenced in paragraph 15 in November 2013, and Lowe's continued to operate that store at all times through the filing of this lawsuit.

## Material Facts

19. According to Lowe's records, Kifer's gender is female.

20. Lowe's fired Kifer.

21. Lowe's fired Kifer on November 25, 2013.

22. Lowe's fired Kifer on November 25, 2013, effective immediately.

23. It was Mr. Jim Wilson who, on behalf of Lowe's, told Kifer she was fired.

24. It was Mr. Jim Wilson who, on November 25, 2013, told Kifer she was fired.

25. It was Mr. Jim Wilson, and only Mr. Jim Wilson, who, on behalf of Lowe's, made the decision to fire Kifer.

26. It was Mr. Jim Wilson who, on behalf of Lowe's, made the final, ultimate decision to fire Kifer.

27. On November 25, 2013, Lowe's employed Mr. Jim Wilson as a Market Director.

28. On November 25, 2013, Lowe's employed Mr. Jim Wilson as a Market Director for the following group of Lowe's stores -- Market 1279.

29. On November 25, 2013, Market 1279 consisted of 12 stores.

30. On November 25, 2013, Market 1279 consisted of stores that were all located in the State of Texas.

31. At the time when Lowe's fired Kifer, Kifer's job title at Lowe's was Store Manager.

32. At the time when Lowe's fired Kifer, Kifer worked at Lowe's Store No. 1801.

33. At the time when Lowe's fired Kifer, Kifer worked at the store located at 201 West Main Street, Gun Barrel City, Texas 75156.

34. On November 25, 2013, and for at least 12 months before that date, Lowe's was producing documents in the ordinary course of its business that it called a "score card."

35. On November 25, 2013, and for at least 12 months before that date, a Lowe's "score card" contained multiple performance categories.

36. On November 25, 2013, the "score card" for Store No. 1801 showed that Store No. 1801 ranked in the top four or better of all stores that were located at the time in Market 1279.

37. On November 25, 2013, and for at least 12 months before that date, the score card for Store No. 1801 showed that Store No. 1801 ranked in the top four or better of all stores that were located at the time in Market 1279.

38. On or after November 25, 2013, Lowe's replaced Kifer with a certain Mr. Dan Ford.

39. On or after November 25, 2013, Lowe's replaced Kifer with a certain Mr. Dan Ford on a temporary basis.

40. On or after November 25, 2013, Lowe's replaced Kifer with a certain Mr. Dan Ford on a temporary basis, and some time after that it replaced Kifer on a permanent basis with a certain Mr. Ian Anderson.

41. On or after November 25, 2013, Lowe's assigned a certain Mr. Dan Ford to perform substantially all of the job tasks previously performed by Kifer.

42. On or after November 25, 2013, Lowe's assigned a certain Mr. Dan Ford to perform, on a temporary basis, substantially all of the job tasks previously performed by Kifer.

43. On or after November 25, 2013, Lowe's assigned a certain Mr. Dan Ford to perform, on a temporary basis, substantially all of the job tasks previously performed by Kifer, and some time after that Lowe's assigned a certain Mr. Ian Anderson to perform, on a permanent basis, substantially all of the job tasks previously performed by Kifer.

44. Lowe's has had a certain Mr. Dan Ford on its payroll at all times from November 25, 2013 through the day of the filing of this lawsuit.

45. According to Lowe's records, Mr. Dan Ford's gender is male.

46. Lowe's has had a certain Mr. Ian Anderson on its payroll at all times from November 25, 2013 through the day of the filing of this lawsuit.

47. According to Lowe's records, Mr. Ian Anderson's gender is male.

48. On the day when Lowe's fired Kifer, Kifer possessed the necessary qualifications for her job as a Store Manager of Lowe's in the sense that at the time of her discharge Kifer was not suffering from any physical disability, or from the loss of any necessary professional license,

or from any other occurrence that rendered her unfit for the position of Store Manager at Lowe's.

49.     During the same meeting when Mr. Jim Wilson told Kifer she was fired, Wilson also told Kifer that Lowe's decision to fire Kifer was because Kifer had not "reversed" – Wilson used the word "reversed" -- a transaction that a certain Mr. Patrick Cobb, one of the assistant managers assigned to Store No. 1801, had approved.

50.     The transaction referenced in paragraph 49 had been approved, prior to the consummation of that transaction, by a Lowe's employee named Elmer Belssner.

51.     The transaction referenced in paragraph 49 had been approved, by email, prior to the consummation of that transaction, by a Lowe's employee named Elmer Belssner.

52.     The transaction referenced in paragraph 49 had been approved, by email, prior to the consummation of that transaction, by a Lowe's employee named Elmer Belssner, who at that time was an Account Executive for Pro Services of District #1279.

53.     The transaction referenced in paragraph 49 had been approved, by email, prior to the consummation of that transaction, by a Lowe's employee Elmer Belssner, who at that time was an Account Executive for Pro Services of District #1279, and who at that time was also known as the "District Captain."

54.     According to Lowe's records, Elmer Belssner's gender is male.

55.     Elmer Belssner has been on Lowe's payroll at all times from November 24, 2013 to the day of the filing of this lawsuit.

56.     During the same meeting when Mr. Jim Wilson told Kifer she was fired, Wilson did not give Kifer any reason for Lowe's decision to fire Kifer other than the reason contained in paragraph 49 of this lawsuit.

57. At no time from the day when Lowe's advised Kifer she was fired, and continuing up to the day of the filing of this lawsuit, has Lowe's ever tendered to Kifer, directly or indirectly, any "*documents, electronically stored information, [or] tangible things*," as that phrase is used in the title of FED. R. CIV. P. 34, advising Kifer as to the reasons why Lowe's contends it fired Kifer.

58. At no time before November 25, 2013 had Lowe's ever tendered to Kifer any "*documents, electronically stored information, [or] tangible things*," as that phrase is used in the title of FED. R. CIV. P. 34, advising Kifer that she was required to "reverse" a transaction like the one that Cobb had approved, referenced in paragraph 49.

59. At no time before November 25, 2013 had Mr. Jim Wilson ever verbally instructed Kifer to "reverse" a transaction like the one that Cobb had approved, referenced in paragraph 49.

60. At no time before November 25, 2013 had any individual whom Lowe's had previously empowered with the authority, in whole or in part, to take any tangible employment action against Kifer, ever instructed Kifer to "reverse" a transaction like the one that Cobb had approved, referenced in paragraph 49.

61. Before November 25, 2013, other store managers in Market 1279 had failed to "reverse" transaction(s) like the one that Cobb had approved, referenced in paragraph 49.

62. Before November 25, 2013, other store managers in Market 1279 had failed to "reverse" transaction(s) like the one that Cobb had approved, referenced in paragraph 49. However, unlike Kifer, Lowe's did not fire any of those store managers.

63. Before November 25, 2013, other store managers in Market 1279, all of whom

were male, had failed to "reverse" transaction(s) like the one that Cobb had approved, referenced in paragraph 49. However, unlike Kifer, Lowe's did not fire any of those store managers.

64. Before November 25, 2013, other store managers in Market 1279, all of whom were male, had failed to "reverse" transaction(s) like the one that Cobb had approved, referenced in paragraph 49. However, Lowe's did not suspend any of those store managers without pay.

65. Before November 25, 2013, other store managers in Market 1279, all of whom were male, had failed to "reverse" transaction(s) like the one that Cobb had approved, referenced in paragraph 49. However, Lowe's did not suspend any of those store managers with pay.

66. Before November 25, 2013, other store managers in Market 1279, all of whom were male, had failed to "reverse" transaction(s) like the one that Cobb had approved, referenced in paragraph 49. However, Lowe's did not demote any of those store managers.

67. Before November 25, 2013, other store managers in Market 1279, all of whom were male, had failed to "reverse" transaction(s) like the one that Cobb had approved, referenced in paragraph 49. However, Lowe's did not give any of those store managers any written warning, counseling, or write-up.

68. Before November 25, 2013, other store managers in Market 1279, all of whom were male, had failed to "reverse" transaction(s) like the one that Cobb had approved, referenced in paragraph 49. However, Lowe's did not give any of those store managers any verbal warning or counseling.

69. On November 25, 2013, Kifer was the only female Store Manager whom Lowe's had assigned to work at any store in Market 1279.

70. As a result of the foregoing conduct by Lowe's, Kifer has sustained substantial

financial losses, and she is continuing to sustain such losses.

71.    As a result of the foregoing conduct by Lowe's, Kifer has suffered severe mental anguish, and she is continuing to suffer such anguish.

**Count One – Title VII; Gender Discrimination; Discharge**

72.    Kifer re-alleges and incorporates by reference all allegations set forth in paragraphs 1 through 71.

73.    Lowe's violated Section 703(a)(1) of Title VII, which is codified at 42 U.S.C. §2000e-2(a)(1), when it fired Kifer. A motivating factor in Lowe's discharge decision was Kifer's gender (female).

74.    On November 25, 2013, Kifer belonged to a protected group (female).

75.    On November 25, 2013, Kifer was "qualified," as that word is defined in *Bienkowski v. American Airlines, Inc.,* 851 F.2d 1503, 1506 n. 3 (5th Cir. 1988), for the position she held at Lowe's (Store Manager).

76.    On November 25, 2013, Kifer suffered from an adverse employment action (Lowe's fired her.)

77.    On or after November 25, 2013, Lowe's replaced Kifer with someone who was outside of Kifer's protected class – first, Mr. Dan Ford (male); then, Mr. Ian Anderson (male).

78.    Pleading in the alternative, Lowe's treated other similarly-situated employees – namely, other store managers in Market 1279, all of whom were male – more favorably than it treated Kifer.

79.    On December 11, 2013, the U.S. Equal Employment Opportunity Commission ("EEOC") received a completed EEOC Form 5, called a *Charge of Discrimination* ("Charge"),

from Kifer.

80.     At some point after receiving the Charge, EEOC assigned to the Charge the following number – 450.2014.00708.

81.     On June 16, 2014 EEOC signed a letter titled *Notice of Right to Sue (Issued on Request)* (hereinafter ("Right-to-Sue Letter.")

82.     The Charge was on file with EEOC for more than 180 days before EEOC signed the Right-to-Sue Letter.

83.     This lawsuit is filed within ninety (90) calendar days of the receipt by Kifer's counsel of the Right-to-Sue Letter.

84.     Kifer has satisfied all conditions precedent to the filing of Count One.

85.     By reason of Lowe's violation of Title VII, Kifer is entitled to receive an award of wages and employment benefits in the past -- back pay – plus wages and employment benefits in the future – front pay -- and other appropriate equitable relief. 42 USC 2000e-§5(g)(1).

86.     By reason of Lowe's violation of Title VII, Kifer is entitled to recover compensatory damages in the past, which includes damages for emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non pecuniary losses, as well as compensatory damages in the future, which includes damages for emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non pecuniary losses. 42 USC §1981a(a)(1).

87.     Because Lowe's engaged in such discriminatory practices with malice or with reckless indifference to Kifer's federally-protected rights, Kifer is entitled to an award of punitive damages against Lowe's. 42 USC §1981a(a)(1).

88. Kifer seeks recovery of all interest that is lawfully available to her.

89. As the prevailing party, Kifer is entitled to an award of attorney fees pursuant to 42 U.S.C §2000e-5(k). Kifer also requests, pursuant to 42 U.SC §2000e-5(k), reimbursement for expert witness fees as part of her costs.

## Jury Demand

90. Kifer demands a jury on all issues so triable. FED. R. CIV. P. 38(b)(1).

## Request for Relief

Based on the foregoing, Plaintiff Kellie Kifer asks that Defendant Lowe's Home Centers, LLC, f/k/a Lowe's Home Centers, Inc., appear and answer, that Kifer have final judgment against Defendant as set forth herein, and for all such other and further relief to which Kifer may be justly entitled.

Dated June 28, 2014

Respectfully submitted,

By: ____/s/_____

**Wade A. Forsman**
*Lead Attorney*
State Bar No. 07264257
P.O. Box 918
Sulphur Springs, TX 75483-0918
903.689.4144 Telephone-East Texas
972.499.4004 Telephone–Dallas/Fort Worth
903.689.7001 Facsimile
wade@forsmanlaw.com

**Attorney for Plaintiff Kellie Kifer**